# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jaime Medina, | No. CV-16-00462-PHX-JJT |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

At issue is the denial of Plaintiff Jaime Medina's Applications for Disability Insurance Benefits and Supplemental Security Income by the Social Security Administration ("SSA") under the Social Security Act ("the Act"). Plaintiff filed a Complaint (Doc. 1) with this Court seeking judicial review of that denial, and the Court now addresses Plaintiff's Opening Brief (Doc. 14, "Pl.'s Br."), Defendant Social Security Administration Commissioner's Opposition (Doc. 15, "Def.'s Br."), and Plaintiff's Reply (Doc. 19, "Reply"). The Court has reviewed the briefs and Administrative Record (Doc. 11, R.) and now affirms the Administrative Law Judge's decision (R. at 14-23) as upheld by the Appeals Council (R. at 1-4).

## I.    BACKGROUND

Plaintiff filed her Applications on October 25, 2012, for a period of disability beginning October 8, 2012. (R. at 174-80.) Plaintiff's claim was denied initially on January 28, 2013 (R. at 88-94), and on reconsideration on August 6, 2013 (R. at 97-103). Plaintiff then testified at a hearing held before an Administrative Law Judge ("ALJ") on

October 29, 2014. (R. at 29-57.) On December 31, 2014, the ALJ denied Plaintiff's Applications. (R. at 14-23.) On December 22, 2015, the Appeals Council upheld the ALJ's decision. (R. at 1-4.) The present appeal followed.

After the parties completed the briefing on Plaintiff's appeal, Plaintiff filed a Motion to Amend the Complaint to limit the time for which she sought benefits to the period from October 8, 2012 (alleged onset date) to December 31, 2014, because the SSA approved Plaintiff's subsequent application for disability benefits beginning January 1, 2015. (Doc. 20.) The Court granted Plaintiff's Motion to Amend and ordered Plaintiff to file the Amended Complaint on the docket by May 15, 2017, which Plaintiff never did. (Doc. 21.) Nonetheless, the Court considers only the period from October 8, 2012, to December 31, 2014 as the relevant period for Plaintiff's present appeal of the denial of her first applications for disability benefits.

The Court has reviewed the medical evidence in its entirety and finds it unnecessary to provide a complete summary here. The pertinent medical evidence will be discussed in addressing the issues raised by the parties. In short, upon considering the medical records and opinions, the ALJ found that Plaintiff has severe impairments of irritable bowel syndrome ("IBS"), headaches, obesity, chronic fatigue, and anemia (R. at 17), but that Plaintiff has the residual functional capacity ("RFC") to perform light work with some limitations, including her past work as an ultrasound technician, such that Plaintiff is not disabled under the Act (R. at 19-23).

## II. LEGAL STANDARD

In determining whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The court may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, but less than a preponderance; it is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the

record as a whole. *Id.* To determine whether substantial evidence supports a decision, the court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* As a general rule, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

To determine whether a claimant is disabled for purposes of the Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled and the inquiry ends. *Id.* At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. 20 C.F.R. § 404.1520(a)(4)(ii). If not, the claimant is not disabled and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* If not, the ALJ proceeds to step four. *Id.* At step four, the ALJ assesses the claimant's RFC and determines whether the claimant is still capable of performing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If so, the claimant is not disabled and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step, where he determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id.* If not, the claimant is disabled. *Id.*

# III.   ANALYSIS

Plaintiff raises two arguments for the Court's consideration: (1) the ALJ erred in weighing a treating physician's opinion; and (2) the ALJ erred in finding Plaintiff's testimony less than fully credible. (Pl.'s Br. at 10-25.)

## A.   The ALJ Assigned Proper Weight to the Assessments of Plaintiff's Treating Physician and Properly Considered the Record as a Whole

Plaintiff first argues the ALJ committed reversible error by assigning inadequate weight to the assessment of one of Plaintiff's medical care providers, Dr. Thomas Bauch. (Pl.'s Br. at 10-19.) An ALJ "may only reject a treating or examining physician's uncontradicted medical opinion based on 'clear and convincing reasons.'" *Carmickle v. Comm'r of Soc. Sec.*, 533 F.3d 1155, 1164 (9th Cir. 2008) (citing *Lester v. Chater*, 81 F. 3d 821, 830-31 (9th Cir. 1996)). "Where such an opinion is contradicted, however, it may be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Id.*

In this instance, the ALJ found that Dr. Bauch's assessment of Plaintiff's functional capacity was inconsistent with reliable portions of the medical record—including the reports of Plaintiff's gastroenterologist, Dr. Sukhdeep Padda (R. at 308-92)—and contradicted by the assessment of the state agency doctor, Dr. Robert Quinones. (R. at 22, 62-73.) The Court must therefore examine whether the ALJ provided specific and legitimate reasons for discounting Dr. Bauch's assessment, supported by substantial evidence when examining the record as a whole. *See Carmickle*, 533 F.3d at 1164.

After reviewing the medical record, the ALJ found (1) that the medical record revealed substantial inconsistencies in the severity and frequency of diarrhea, constipation, headaches, and anemia symptoms, and (2) that Plaintiff's claim that she is disabled by pain, fatigue and an irritable bowel is not supported by the objective medical tests and studies in the record or the physical examinations of Plaintiff and is inconsistent with Plaintiff's daily activities and her treatment regimen. (R. at 20-21.) As a result, the

ALJ gave no weight to Dr. Bauch's assessment that Plaintiff would be off task around 16-20 percent of an eight-hour day, would miss six days or more a month, could only lift/carry less than ten pounds, could sit or stand/walk less than two hours in an eight-hour day, and could use the upper and lower extremities less than occasionally. (R. at 22.)

Plaintiff first argues that the ALJ's conclusion that Plaintiff's IBS is not supported by objective tests misunderstands the nature of IBS and thus is not legitimate. (Pl.'s Br. at 12.) Specifically, Plaintiff cites medical treatises stating, among other things, that the cause of IBS is unknown and its diagnosis is clinical and based on symptoms after exclusion of other diseases. (Pl.'s Br. at 13.) Plaintiff argues the ALJ erred in discounting Dr. Bauch's opinion for the reason that it was based on Plaintiff's subjective complaints, because IBS is diagnosed in that very manner. (Pl.'s Br. at 15.) Plaintiff further contends the ALJ erred by stating Plaintiff's daily activities are inconsistent with her reported limitations, because Plaintiff's activities can all be performed with frequent breaks and her other limitations. (Pl.'s Br. at 16.) Plaintiff also takes issue with the ALJ's reliance on the opinion of the non-examining state agency doctor over that of Dr. Bauch and the ALJ's observation that Dr. Bauch is not a specialist in treating IBS. (Pl.'s Br. at 17.)

The ALJ did not go as far as Plaintiff claims. The ALJ did not entirely discount Plaintiff's reported limitations or conclude that subjective reports are not relevant to a treating physician's diagnosis of IBS. Rather, the ALJ stated Plaintiff's reported limitations were extreme in light of the medical treatment records, which often chronicled insignificant symptoms or included observations, by Dr. Padda among others, that Plaintiff had normal gastrointestinal and abdominal signs. (R. at 20-21, 339, 345.) The ALJ thus discounted Dr. Bauch's opinion regarding Plaintiff's functional capacity to the extent it relied on Plaintiff's overstated (or "suspect") reports of limitations. (R. at 22.) This is a specific and legitimate reason to discount Dr. Bauch's opinion.

Likewise, the ALJ did not discount Dr. Bauch's opinions of Plaintiff's functional capacity based entirely on the fact that he is a family medicine practitioner rather than a specialist. But the ALJ referred repeatedly to the medical findings Dr. Padda, a

gastroenterologist and thus more specialized in treating IBS than Dr. Bauch. (R. at 20-21.) The ALJ's reliance on the gastroenterologist's medical records was proper. *See Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996). To the extent the medical records of Dr. Padda's care of Plaintiff differed from those of Dr. Bauch's care, it is not the Court's role to resolve them. The ALJ provided specific and legitimate reasons to rely on the treatment records of Plaintiff's gastroenterologist—a specialist in Plaintiff's condition—to make a functional capacity assessment.

Although he did not have the benefit of examining Plaintiff, Dr. Quinones, the state agency doctor, did have the benefit of seeing all of Plaintiff's treatment records, including those of Plaintiff's gastroenterologist. Because the medical evidence supports Dr. Quinones's opinion, the ALJ had a specific and legitimate reason to rely on that opinion. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (citing *Magallanes v. Bowen*, 881 F.2d 747, 752 (9th Cir. 1989)).

The Court agrees with the ALJ that it appears Plaintiff's reports of daily activities—including caring for two children (one with autism), driving to and from school, preparing meals, and vacationing in Mexico—do not appear to be consistent with Plaintiff's reports of limitations or Dr. Bauch's associated opinion of Plaintiff's functional capacity—including lifting/carrying less than ten pounds, sitting less than two hours, and standing/walking less than two hours in an eight-hour period. (R. at 21-22.) The ALJ may consider such factors in weighing a plaintiff's credibility. *Tommasetti v. Astrue*, 553 F.3d 1035, 1039 (9th Cir. 2008). However, the Court is also cognizant that "one does not need to be 'utterly incapacitated' in order to be disabled." *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) (internal citation omitted). The record is not entirely clear if Plaintiff's ability to complete daily tasks would be transferrable to the work setting. *See id.* The Court need not reach this question, however, because the ALJ has provided other sufficient, specific and legitimate reasons to discount Dr. Bauch's opinion of Plaintiff's functional limitations, as discussed above. Thus, the Court will not

disturb the ALJ's conclusion. *See Tommasetti*, 533 F.3d at 1041; *Magallanes*, 881 F.2d at 751-53.

### B.    The ALJ Properly Weighed Plaintiff's Testimony

Plaintiff also argues that the ALJ erred in his consideration of Plaintiff's symptom testimony. (Pl.'s Br. at 19-25.) While credibility is the province of the ALJ, an adverse credibility determination requires the ALJ to provide "specific, clear and convincing reasons for rejecting the claimant's testimony regarding the severity of the claimant's symptoms." *Treichler v. Comm'r of Soc. Sec.*, 775 F.3d 1090, 1102 (9th Cir. 2014) (citing *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996)). "In evaluating the credibility of pain testimony after a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain." *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005). This is because "pain testimony may establish greater limitations than can medical evidence alone." *Id.* The ALJ may properly consider that the medical record lacks evidence to support certain symptom testimony, but that cannot form the sole basis for discounting the testimony. *Id.* at 681. The ALJ may also properly consider inconsistencies in the claimant's testimony, including inconsistencies between the claimant's testimony of daily activities and symptom testimony.

Plaintiff has reported occasional incontinence as well as stomach pain, bloating, occasional constipation, and diarrhea causing frequent bathroom visits. She has also stated she has experienced weakness, muscle pain, shortness of breath, exhaustion, headaches, and an increased heart rate. She testified she cannot walk much, stand for long periods, or lift heavy objects.

The ALJ discounted certain subjective symptom testimony for some of the reasons mentioned above—inconsistency with the treatment records of her gastroenterologist and her reports of the ability to perform a number of daily activities. As the Court noted above, the Court cannot find that the ALJ erred in considering the record of Plaintiff's

treatment by her gastroenterologist, and the ALJ identifies specific inconsistencies between Plaintiff's treatment and her symptom testimony.[1] For example, the ALJ cites numerous specific portions of the medical record, prepared by a gastroenterologist, stating that Plaintiff's gastrointestinal and abdominal signs were normal. (R. at 20.) As inconsistencies, the ALJ also cites portions of the record in which Plaintiff did report certain symptoms associated with IBS. (R. at 20.) While Plaintiff would now like the Court to consider medical treatises outside the case record regarding the diagnosis and treatment of IBS, it is not the Court's function to formulate a medical opinion, much less one in contravention to the medical treatment records of Plaintiff's gastroenterologist or the ALJ's reliance thereon. *See Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999). By identifying these inconsistencies as a factor in his credibility determination, the ALJ provided a clear and convincing reason to discount certain symptom testimony. *See Burch*, 400 F.3d at 680.

Likewise, the ALJ's consideration of Plaintiff's testimony regarding performing daily tasks and traveling internationally against her symptom testimony was not improper. *See Tommasetti*, 553 F.3d at 1039. The ALJ specifically noted that Plaintiff's testimony that she went to Mexico for a ten-day vacation and had no problems with the travel or stay abroad suggested that she overstated her symptoms. (R. at 21.) Likewise, though Plaintiff testified she could generally not lift or carry and can use her upper and lower extremities only less than occasionally, she also testified that she completes household chores and cares for two children, which involves both driving a car and cooking meals. (R. at 21.) This inconsistency is also a specific, clear and convincing reason for the ALJ to discount certain symptom testimony.

Though the ALJ cited other reasons to discount Plaintiff's symptom testimony, the reasons discussed above are sufficient for the Court to conclude that the ALJ did not err.

---

[1] Though Plaintiff argues at one point in her brief that "the ALJ did not specifically identify inconsistencies between plaintiff's testimony and the record," that argument follows five pages of analysis in which Plaintiff examines specific inconsistencies identified by the ALJ. (Pl.'s Br. at 20-25.) The Court does not find the ALJ's analysis lacked the requisite specificity.

*See Turner v. Comm'r, Soc. Sec. Admin.*, 613 F.3d 1217, 1224-25 (9th Cir. 2010); *Burch*, 400 F.3d at 680-81.

## III. CONCLUSION

Plaintiff raises no error on the part of the ALJ, and the SSA's decision denying Plaintiff's Application for Supplemental Security Income benefits under the Act was supported by substantial evidence in the record.

IT IS THEREFORE ORDERED affirming the December 31, 2014 decision of the Administrative Law Judge, (R. at 14-23), as upheld by the Appeals Council on December 22, 2015, (R. at 1-4).

IT IS FURTHER ORDERED directing the Clerk to enter final judgment consistent with this Order and close this case.

Dated this 22nd day of September, 2017.

_____
Honorable John J. Tuchi
United States District Judge